FILED
2012 MAY -1 PM 2:28
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ___

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2012 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>            )<br>     Plaintiff,  )<br>            )<br>  v.        )<br>            )<br>GEORGE SAMUEL LAING,  )<br>AUGUSTUS OHEMENG, M.D.,  )<br>GEORGE TARRYK, M.D., and  )<br>EMMANUEL CHIDUEME,  )<br>            )<br>     Defendants.  )<br>_____) | No. CR **CR12-0415**<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 2(b): Causing an Act To Be Done] |

The Grand Jury charges:

COUNTS ONE THROUGH SIX

[18 U.S.C. §§ 1347, 2(b)]

A. INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

The Defendants, the Pacific Clinic, Ivy Medical Supply, and Santos Medical Supply

1. Defendant GEORGE SAMUEL LAING ("LAING") was the manager and operator of the medical clinic that was located at

2491 Pacific Avenue, Suite #2, Long Beach, California (the "Pacific Clinic"), within the Central District of California.

2. Defendant AUGUSTUS OHEMENG, M.D. ("OHEMENG") was a physician who treated patients at the Pacific Clinic.

3. Defendant GEORGE TARRYK, M.D. ("TARRYK") was a physician who treated patients at the Pacific Clinic.

4. Defendant EMMANUEL CHIDUEME was the owner and operator of Ivy Medical Supply, Inc. ("Ivy"), a durable medical equipment ("DME") supply company.

5. From in or about June 2004 until at least in or about September 2009, Ivy was located at 1304 South Magnolia Avenue, Anaheim, California, within the Central District of California. Ivy became a Medicare provider and was issued a Medicare provider number on or about June 30, 2002.

6. Santos Medical Supply ("Santos") was a DME supply company located at 2821 South Vermont Avenue in Los Angeles, California, within the Central District of California.

7. Ivy and Santos purported to provide to Medicare beneficiaries, among other things, enteral nutrition, which was a liquid nutritional supplement sold under brand names such as Ensure and Glucerna, and enteral nutrition feeding supply kits, which were kits that included syringes used to administer enteral nutrition to patients who received their nutrition through a feeding tube rather than by mouth.

8. Between in or about February 2005 and in or about September 2008, defendants OHEMENG and TARRYK, while practicing at the Pacific Clinic, prescribed enteral nutrition and feeding supply kits to approximately 370 Medicare beneficiaries whom

defendant LAING referred to Santos. Between in or about February 2005 and in or about September 2009, defendants OHEMENG and TARRYK, while practicing at the Pacific Clinic, prescribed enteral nutrition and feeding supply kits to approximately 367 Medicare beneficiaries whom defendant LAING referred to Ivy.

9. Between in or about February 2005 and in or about September 2009, based on prescriptions written by defendants OHEMENG and TARRYK, Santos and Ivy billed Medicare approximately $2,373,922 and $3,314,177, respectively, for enteral nutrition and feeding supply kits allegedly supplied to Medicare beneficiaries. Based on these claims, Medicare paid Santos and Ivy approximately $1,451,414 and $1,518,254, respectively.

The Medicare Program

10. Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency within the United States Department of Health and Human Services.

11. Individuals who qualified for Medicare benefits were commonly referred to as Medicare "beneficiaries." Each beneficiary was given a Health Identification Card Number ("HICN") unique to that beneficiary.

12. DME companies, physicians, and other health care providers that provided services that were reimbursed by Medicare were referred to as "providers."

13. To become eligible to participate in Medicare, Medicare required DME companies to submit an application in which the

company agreed to comply with all Medicare-related laws and regulations. If Medicare approved the application, Medicare assigned the DME company a Medicare "provider number," which enabled the DME company to submit claims to Medicare for reimbursement for products provided to Medicare beneficiaries.

14. Most DME providers, including Santos and Ivy, submitted their claims electronically.

15. Medicare required a claim for Medicare reimbursement of DME to set forth, among other things, the beneficiary's name and HICN, the type of DME provided to the beneficiary, the date that the DME was provided, and the name and Unique Physician Identification Number ("UPIN") and/or the National Provider Identifier ("NPI") of the physician who prescribed or ordered the DME.

16. Medicare reimbursed DME providers only for DME that was medically necessary to the treatment of a beneficiary's illness or injury, was prescribed by a beneficiary's physician, and was provided in accordance with Medicare regulations and guidelines that governed whether a particular item would be reimbursed by Medicare.

17. To bill Medicare, a DME provider submitted a claim (Form 1500), which Medicare required to be truthful, complete, and not misleading. In addition, when submitting a claim to Medicare, a DME provider certified that the services or supplies covered by the claim were medically necessary.

18. Prior to January 2007, for some types of DME, including enteral nutrition, Medicare also required a Certificate of Medical Necessity ("CMN"), signed by the referring physician,

certifying that the patient had the medical conditions necessary to justify the DME.

19. For enteral nutrition to be covered by Medicare, the Medicare beneficiary who received the enteral nutrition must have had some illness or injury that prevented him from swallowing or ingesting nutrients by mouth. Medicare would not cover nutritional supplements for patients who were able to drink nutritional supplements normally.

20. Patients receiving enteral nutrition through a feeding tube required approximately 1600 calories per day. Such patients generally required one syringe per day to inject the enteral nutrition into a feeding tube.

B.  <u>THE FRAUDULENT SCHEME</u>

21. Beginning on or about February 28, 2005, and continuing through on or about September 30, 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendants LAING, OHEMENG, TARRYK, and CHIDUEME, together with others known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud, executed and attempted to execute a scheme and artifice: (a) to defraud a health care benefit program, namely Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from Medicare by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

22. The fraudulent scheme operated, in substance, in the following manner:

     a. Defendant LAING opened and operated the Pacific Clinic and recruited defendants OHEMENG and TARRYK as treating physicians for the clinic.

     b. Defendant CHIDUEME established Ivy, a retail DME company, and operated Ivy for the purpose of submitting claims to the Medicare program.

     c. Defendant LAING used patient recruiters, known as "marketers" or "cappers," for the purpose of bringing Medicare beneficiaries to the Pacific Clinic.

     d. At the Pacific Clinic, defendants OHEMENG and TARRYK performed physical examinations and administered tests for Medicare beneficiaries. Following the examinations, defendants OHEMENG and TARRYK prescribed Medicare beneficiaries 1600 calories of enteral nutrition per day "with feeding syringes."

     e. The prescriptions for enteral nutrition and feeding syringes written by defendants OHEMENG and TARRYK were fraudulent in that the Medicare beneficiaries were not tube fed, did not require a full daily value of 1600 calories in liquid nutrition, and had no need for prescription syringes.

     f. Defendant OHEMENG fraudulently and falsely signed CMNs certifying that patients were tube fed and could not ingest food orally, even though, as defendant OHEMENG then well knew, the patients did not have a feeding tube and could ingest food orally.

     g. Once defendants OHEMENG and TARRYK wrote the false and fraudulent enteral nutrition prescriptions, defendant LAING referred the prescriptions to DME supply companies, including Santos and Ivy, in exchange for kickback payments. A Santos

employee, J.G., and others known and unknown to the Grand Jury, paid LAING approximately $300 for each enteral nutrition and feeding supply kit prescription. Defendant CHIDUEME, on behalf of Ivy, also made kickback payments to defendant LAING in exchange for the referral of enteral nutrition and feeding supply kit prescriptions.

   h. Based on the false and fraudulent prescriptions written by defendants OHEMENG and TARRYK and referred by defendant LAING, one or more co-schemers at Santos submitted and caused to be submitted false and fraudulent claims to Medicare on behalf of Santos, falsely representing that Santos had supplied Medicare beneficiaries with certain quantities of medically necessary enteral nutrition and feeding supply kits when, in truth and fact, the enteral nutrition and feeding supply kits were not medically necessary because the beneficiaries were drinking the liquid nutrition normally and Santos was supplying only a fraction of the enteral nutrition and supply kits for which it was billing Medicare.

   i. Based on the false and fraudulent prescriptions written by defendants OHEMENG and TARRYK and referred by defendant LAING, defendant CHIDUEME submitted and caused to be submitted false and fraudulent claims to Medicare on behalf of Ivy, falsely representing that Ivy had supplied Medicare beneficiaries with certain quantities of medically necessary enteral nutrition and feeding supply kits when, in truth and fact, the enteral nutrition and feeding supply kits were not medically necessary because the beneficiaries were drinking the liquid nutrition normally and Ivy was supplying only a fraction

of the enteral nutrition and feeding supply kits for which it was billing Medicare.

   j. Between in or about February 2005 and in or about September 2008, Santos submitted false and fraudulent claims to Medicare for enteral nutrition and enteral nutrition feeding supply kits in the amount of approximately $2,373,922. Medicare in turn paid Santos approximately $1,451,414 on those claims.

   k. Between in or about February 2005 and in or about September 2009, Ivy submitted false and fraudulent claims to Medicare for enteral nutrition and enteral nutrition feeding supply kits in the amount of approximately $3,314,177. Based on these claims, Medicare paid Ivy approximately $1,518,254.

C. <u>EXECUTION OF THE FRAUDULENT SCHEME</u>

  23. On or about the dates set forth below, within the Central District of California and elsewhere, the defendants listed below, together with others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the fraudulent scheme described above, knowingly and willfully caused to be submitted to Medicare the following false and fraudulent claims for payment for DME purportedly provided to the beneficiaries listed below:

| COUNT | DEFENDANT | <u>CLAIM NUMBER/ DME COMPANY</u> | <u>DATE CLAIM SUBMITTED</u> | <u>AMOUNT OF CLAIM</u> | <u>BENEFICIARY - TYPE OF DME</u> |
|---|---|---|---|---|---|
| ONE | LAING, OHEMENG, TARRYK | 107122847993000 (SANTOS) | 05/2/2007 | $636.43 | S.Y. - enteral nutrition and syringes |

8

| | | | | | |
|---|---|---|---|---|---|
| TWO | LAING, OHEMENG, TARRYK | 108183853073000 (SANTOS) | 7/1/2008 | $636.43 | S.P. - enteral nutrition and syringes |
| THREE | LAING, OHEMENG, TARRYK | 108246827299000 (SANTOS) | 9/2/2008 | $971.10 | S.L. - enteral nutrition and syringes |
| FOUR | LAING, OHEMENG, TARRYK, CHIDUEME | 108337858672000 (IVY) | 12/02/2008 | $779.65 | S.L. - enteral nutrition and syringes |
| FIVE | LAING, OHEMENG, TARRYK, CHIDUEME | 109156805900000 (IVY) | 06/05/2009 | $754.50 | S.P. - enteral nutrition and syringes |
| SIX | LAING, OHEMENG, TARRYK, CHIDUEME | 109245806295000 (IVY) | 09/02/2009 | $754.50 | S.Y. - enteral nutrition and syringes |

A TRUE BILL

/S/
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

BEONG-SOO KIM
Assistant United States Attorney
Chief, Major Frauds Section

CONSUELO S. WOODHEAD
Assistant United States Attorney
Deputy Chief, Major Frauds Section

GRANT B. GELBERG
Special Assistant United States Attorney
Major Frauds Section